**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NINGBO JIARUISI E-COMMERCE CO., LTD. d/b/a GENISBULB, on behalf of itself and all others similarly situated, | ) | Case No. 26-cv-10701 |
| Plaintiff, | ) | |
| v. | ) | |
| WHAM-O HOLDING, LTD. and INTERSPORT CORP. d/b/a WHAM-O, and all others similarly situated, | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT FOR INDEPENDENT RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(d)(1), DECLARATORY RELIEF, RESTITUTION, UNJUST ENRICHMENT AND RELATED EQUITABLE RELIEF**

Plaintiff Ningbo Jiaruisi E-Commerce Co., Ltd. (宁波佳锐斯电子商务有限公司) d/b/a GENISBULB (***"GENISBULB"***), on behalf of itself and all others similarly situated, brings this independent action under Federal Rule of Civil Procedure 60(d)(1) to obtain relief from default judgments and related orders entered in Northern District of Illinois "Schedule A" cases against mainland-China defendants who were incorrectly served via email pursuant to FRCP 4(f)(3) and not through the Hague Service Convention, did not appear, did not settle, and were subjected to default judgments, asset restraints and collection. Plaintiff seeks declaratory and equitable relief, including relief from void judgments, an accounting, restitution of funds collected under such judgments, taxable costs and reasonable attorneys' fees

and litigation expenses to the extent authorized by law, including from any common fund or monetary benefit created, preserved, or restored through this action, prejudgment and post-judgment interest, and related relief necessary to restore the parties to the position they would have occupied absent the improper entry and enforcement of those judgments.

## INTRODUCTION

1. This is a putative bilateral class action and independent equitable action under Federal Rule of Civil Procedure 60(d)(1) arising from Northern District of Illinois Schedule A lawsuits, including Case No. 1:22-cv-06802 (***"'6802"***) in which WHAM-O Holding, Ltd. and Intersport Corp. d/b/a WHAM-O and numerous other similarly situated plaintiffs obtained default judgments against GENISBULB and other similarly situated defendants in thousands of cases after serving them, or purporting to serve them, by electronic means rather than through the Hague Service Convention (the ***"Convention"***).

2. This action seeks to remedy a systemic error which led to violation of the terms of the Convention and the Federal Rules of Civil Procedure (***"FRCP"***) over the course of thousands of functionally identical cases in the Northern District of Illinois (***"NDIL"***).

3. The Convention, formally known as the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 20 U.S.T. 361, is the primary international agreement addressing service of process to which the United States is a signatory. That treaty entered into force in the United States on February 10, 1969, *United States Department of State Treaties in Force*

*(2025)* p. 43. Pursuant to the United States Constitution, Art. VI, Cl. 2, treaties such as the Hague Service Convention are, like federal statutes, the "supreme Law of the Land" and "the Judges in every State shall be bound thereby."

4. The Convention seeks to simplify, standardize, and generally improve the process of serving documents abroad, specifying certain approved methods of service and preempting inconsistent methods of service wherever it applies.

5. Article 1 of the Convention requires that, when the address of the defendant is known, and service abroad is required in a civil or commercial matter, the treaty "shall apply." The Hague Service Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad," except where "the address of the person to be served with the document is not known." *Convention*, Article 1.

6. When it applies, the Convention provides the permissible means of service of process and excludes all others. However, courts in the Northern District of Illinois routinely and incorrectly allowed service of process by means prohibited by the Convention in contravention of FRCP 4(f)(3).

7. Plaintiffs in Schedule A cases, the "***Schedule A Plaintiffs***" or "***SAPs,***" file lawsuits naming as defendants dozens or hundreds of online marketplace sellers, the "***Schedule A Defendants***" or "***SADs,***" under collective captions such as "the partnerships and unincorporated associations identified on Schedule A." Outside of particular factual allegations not relevant to this dispute, the Schedule A cases are substantively identical in form and legal claims, following the same script: they

seek *ex parte* asset restraints, expedited discovery, defaults, default judgments, and turnover orders. Those cases nearly always result in default judgments being entered against SADs and collected by SAPs as WHAM-O did in the ’6802 action.

8. In that case, WHAM-O alleged that the SADs, including GENISBULB, were online sellers operating “Defendant Internet Stores” that targeted consumers in the United States, including Illinois, by offering products bearing allegedly counterfeit versions of WHAM-O’s FRISBEE trademarks. WHAM-O proceeded against GENISBULB as one of numerous seller aliases listed on Schedule A to the Complaint. *See* ’6802, DKT #2 (this document remains sealed despite an order unsealing it dated December 22, 2022, DKT #23).

9. Until recently, courts in the Northern District of Illinois routinely issued orders granting SAPs’ motions for electronic service pursuant to FRCP 4(f)(3) on SADs located in China, the “***Service Orders***.” The Service Orders were typically, but not always, part of a temporary restraining order (***“TRO”)***.

10. That practice stopped after the Seventh Circuit’s decision in *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd., 177 F.4th* 793 (7th Cir. May 29, 2026). That case found that where it applies, the Convention provides the permissible means of service and excludes all others. And because no provision of the Convention authorizes service by email in China, such service violates the Convention and Rule 4(f)(3). *Kangol,* 177 F.4th at 800.

11. Post-Kangol, courts in the NDIL require SAPs to make reasonably diligent efforts to ascertain and, to the extent required, verify a defendant's mailing address before deeming the defendant's address unknown.

12. In the '6802 case, WHAM-O demonstrated no effort, diligent or not, when it moved for a Service Order. Ultimately, based on proof of service pursuant to that Service Order, WHAM-O obtained a default judgment against GENISBULB and the other SADs, which in turn allowed WHAM-O to collect money from GENISBULB and the other SADs.

13. That sequence was repeated thousands of times in thousands of cases which are, in relevant part, identical to the '6802 case. Because the electronic service on GENISBULB and the other SADs in the '6802 case and other Schedule A cases was not permitted under the Convention and hence not permitted under FRCP 4(f)(3), the default judgments entered against them are void, and the money collected by SAPs from SADs pursuant to those void judgments must be returned pursuant to this Court's power of restitution.

**THE PARTIES**

14. GENISBULB is the d/b/a or seller alias of Ningbo Jiaruisi E-Commerce Co., Ltd. (宁波佳锐斯电子商务有限公司), a business entity located in Ningbo, Zhejiang Province, People's Republic of China.

15. Defendant WHAM-O Holding, Ltd., is a foreign company having its principal place of business in Hong Kong at 212-220 Lockhart Road, B2, 11/F., Loyong Court Commercial Bldg., Wan Chai, Hong Kong.

16. Defendant Intersport Corp. d/b/a WHAM-O acts as the sales, marketing, design and distribution arm for WHAM-O products for the Americas and has a place of business at 1 Civic Plaza Dr Ste 600, Carson, California 90745-2243.

## FACTUAL ALLEGATIONS

17. In its December 5, 2022 Memorandum in support of its motion for a TRO, WHAM-O requested that the court allow it to serve the SADs "by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website, and/or by sending an e-mail to the e-mail addresses" for the SADs. DKT 11, p. 24, Exhibit A.

18. WHAM-O did not provide the court with evidence that it had made any effort to determine the address of GENISBULB and the other SADs but only claimed "on information and belief" that the SADs provided false names and addresses. DKT 11, p. 25.

19. Such a subjective belief is insufficient for a court to determine whether a defendant's address is "not known" within the meaning of Article 1 of the Convention.

20. Based solely on its own claimed belief, WHAM-O claimed to be "unable to determine the exact physical whereabouts" of the SADs. Ex. A, p. 27.

21. Despite WHAM-O's failure to show that GENISBULB's and the other SADs' addresses were not known, the '6802 court granted a Service Order (as part of the TRO) pursuant to FRCP 4(f)(3) permitting WHAM-O to serve SADs by electronically publishing a link to the complaint and court orders on a website or by emailing a link to email addresses identified by WHAM-O or third parties.

*See* ’6802, DKT #17 (this document remains sealed despite an order unsealing it dated December 22, 2022, DKT #23). The Service Order was entered in error.

22. Ultimately, WHAM-O obtained a Default Judgment Order against “Defaulting Defendants,” including GENISBULB. The order, like the corresponding functionally identical orders in other Schedule A cases, found that service had been completed through electronic publication or email, found that none of the Defaulting Defendants had answered or appeared, deemed the Defaulting Defendants in default, and entered default judgment against them. *See, e.g., ’6802*, DKT #52, Exhibit B (a ***“Default Judgment Order,”*** and, together with the corresponding default judgment orders entered in other Schedule A cases, the ***“Default Judgment Orders”***).

23. GENISBULB was included on the First Amended Schedule A attached to the Default Judgment Order as defendant number 44. *See* ’6802, DKT #52, p. 7.

24. The Default Judgment Order awarded WHAM-O statutory damages of $200,000 from each Defaulting Defendant, including GENISBULB, and ordered third-party providers holding funds for Defaulting Defendants to restrain accounts and release all restrained monies up to the amount of the statutory damages award to WHAM-O. *See* Exhibit B, p. 7.

25. WHAM-O collected $4,393.41 from GENISBULB. That amount was frozen by Amazon, the e-commerce platform from which GENISBULB operated, pursuant to the TRO issued by the ’6802 court on December 13, 2022. By operation of the Default Judgment Order, Amazon was compelled to restrain GENISBULB’s account

and provide the funds to WHAM-O within 14 days, which it did. GENISBULB remains subject to the remaining balance of the $200,000 judgment.

26. The Default Judgment Order also entered permanent injunctive relief against GENISBULB and the other Defaulting Defendants. That injunctive relief remains in force. Online marketplaces and payment processors treat the entry of such a judgment as an adjudicated finding of infringement. As a result, GENISBULB's selling account, and the accounts of other members of the SAD Class, remain suspended, restricted, or subject to continuing adverse enforcement action by those intermediaries. The challenged Default Judgment Orders therefore continue to injure GENISBULB and the SAD Class independently of the funds already collected.

27. Because the Service Order incorrectly allowed service via email in mainland China, the '6802 court lacked jurisdiction over GENISBULB and the other '6802 SADs and thus the orders entered thereafter, including the Default Judgment Order, were and are void, and the money collected by WHAM-O from GENISBULB and the other SADs was wrongfully obtained and must be returned.

28. The sequence of errors in the '6802 case was repeated, in functionally identical manner, in NDIL courts thousands of times, in favor of hundreds of SAPs and to the detriment of tens of thousands of SADs from whom SAPs have collected millions of dollars.

29. More than 8,900 Schedule A cases were filed in the Northern District of Illinois between 2012 and May of 2026. On information and belief, thousands of

those cases resulted in default judgments entered against defendants located in mainland China following service authorized under FRCP 4(f)(3) by email, electronic publication, or other means not authorized by the Convention. The two WHAM-O defendants together filed at least 116 such cases. On information and belief, SAPs have collected tens of millions of dollars from tens of thousands of SADs.

30. Allowing SAPs to retain those funds would be a grave miscarriage of justice, not only because of the material loss of funds and the extraordinary number of SADs wrongly defaulted, but also because by issuing thousands of Service Orders and Default Judgment Orders, the courts violated not only FRCP 4(f)(3), but the treaty obligations of the United States.

31. Like WHAM-O, SAPs in other Schedule A cases routinely sought leave of court under FRCP 4(f)(3) to serve defendants located in mainland China by email, electronic publication, or other non-Hague means. In the overwhelming majority of those cases, the SAP presented no evidence sufficient to establish that the affected defendants' addresses were "not known" within the meaning of the Convention.

32. The courts in the Northern District of Illinois routinely granted those motions and then subsequently issued Default Judgment Orders allowing SAPs to wrongly collect on the judgments.

33. By not requiring plaintiffs to demonstrate that the defendants' addresses were not known through submitting sworn declarations of fact establishing

reasonably diligent efforts to ascertain each defendant's mailing address, the courts erred in granting those motions.

34. Absent valid service of process, the judgments against GENISBULB and similarly situated class members are void and subject to equitable relief because the courts lacked personal jurisdiction over SADs.

35. GENISBULB brings this action pursuant to FRCP 60(d)(1) to obtain relief from the Default Judgment Order and related orders entered without valid service, to prevent further enforcement of those orders, to obtain an accounting of funds restrained or transferred under them, and to recover restitution, interest, and other equitable relief for itself and similarly situated class members.

36. GENISBULB seeks phased proceedings. In the first phase, the Court can adjudicate common issues concerning the validity of email, electronic-publication, marketplace, or other non-Hague service on mainland-China defendants, whether the courts had personal jurisdiction, whether the judgments entered were void or otherwise unenforceable, and the need for an accounting. In later phases, the Court can implement relief through subclasses, claims procedures, coordinated proceedings in underlying dockets, or other case-management procedures appropriate to the affected judgments and funds.

37. GENISBULB commenced this action promptly after the Seventh Circuit's May 29, 2026 decision in *Kangol*, which established controlling appellate authority concerning the applicability of the Hague Service Convention and the validity of electronic service on mainland-China defendants under Rule 4(f)(3). Before *Kangol*,

courts in this District routinely granted SAPs' motions for authorization to serve mainland-China defendants by electronic means under FRCP 4(f)(3), and prevailing district-court authority generally treated email service as permissible even when the Convention applied.

38. The Default Judgment Orders challenged in this action are typically self-executing. In the ordinary Schedule A case, the affected defendant's funds are restrained by online marketplaces and payment processors before judgment, pursuant to an *ex parte* temporary restraining order and a subsequent preliminary injunction, and are released to the SAP within days or weeks after entry of the Default Judgment Order. As occurred in the '6802 case, the SAP obtains funds in partial satisfaction of the judgment without any subsequent collection effort.

39. The principal jurisdictional questions presented in this action turn on contemporaneous court records created in the underlying Schedule A cases, including the motions seeking alternative service, supporting declarations and exhibits, Service Orders, proofs of service, and Default Judgment Orders. Those records permit the Court to determine what evidence was presented when non-Hague service was requested without reliance upon witness testimony or retrospective reconstruction of the SAPs' efforts.

## JURISDICTION AND VENUE

40. An independent action filed in the same court that rendered the judgment is ancillary to the original proceeding and does not require an independent jurisdictional basis. Thus, this Court has jurisdiction over this independent action

under FRCP 60(d)(1) as the original proceedings took place in the Northern District of Illinois.

41. To the extent an independent jurisdictional basis is required, this action presents federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including FRCP 60(d)(1), the Due Process Clause, FRCP 4, and the Hague Service Convention as implemented and applied in federal civil proceedings.

42. This Court's ancillary equitable jurisdiction includes authority to order restitution, accounting, and related relief consequent upon relief from the challenged judgments. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Count III and any other related state-law claims.

43. Venue is proper in this District under 28 U.S.C. § 1391 because the underlying judgments and related orders were entered in this District, the challenged service, default, asset-restraint, and turnover procedures were sought and obtained in this District, and Defendants invoked this District's judicial process to obtain the judgment and enforcement relief challenged in this action.

44. Venue is also proper because this independent action seeks relief from a judgment entered in this District, and the Court retains equitable authority to determine whether that judgment and related orders should be enforced, vacated, modified, or otherwise relieved against GENISBULB and similarly situated class members.

45. Defendants, the SAPs, are subject to personal jurisdiction in this District because they filed and prosecuted the underlying actions in this District, invoked this Court's jurisdiction, obtained the challenged orders and judgment from this Court, and obtained or sought enforcement relief through this Court against GENISBULB and other proposed class members.

46. The Northern District of Illinois is the appropriate forum for this bilateral class action proceeding because the challenged Default Judgment Orders, asset restraints, service orders, and turnover orders were entered by courts in this District, the underlying Schedule A plaintiffs invoked this District's judicial process, and the requested relief concerns the validity and enforcement of judgments and orders entered in this District.

47. GENISBULB has standing under Article III of the United States Constitution. GENISBULB has suffered concrete and particularized injury in fact: $4,393.41 of its funds were restrained and transferred to WHAM-O; it remains subject to the unsatisfied balance of a $200,000 money judgment; and it remains subject to permanent injunctive relief and the resulting marketplace consequences described above. Those injuries are fairly traceable to the Service Order, the Default Judgment Order, and WHAM-O's enforcement of them, and would be redressed by the relief sought in this action.

## PLAINTIFF CLASS ALLEGATIONS

48. For purposes of this Complaint, Schedule A Cases, or "***SACs,***" are lawsuits, including the '6802 case, that meet all of the following criteria:

a. the case was filed in the Northern District of Illinois, whether or not captioned as a "Schedule A" case;

b. one or more defendants were located in mainland China;

c. the plaintiff or plaintiffs sought leave of court under FRCP 4(f)(3) to serve process on one or more such defendants by email, electronic publication, marketplace notice, or other means not authorized by the Convention;

d. the court granted such motion and allowed service on such defendants via such electronic means;

e. the plaintiff purported to serve one or more such defendants via such electronic means;

f. the court entered a default judgment against one or more such defendants; and

g. such judgment remains outstanding against at least one defendant or has been satisfied other than by settlement.

49. Whether SAPs made reasonably diligent efforts to ascertain SADs' mailing addresses before invoking FRCP 4(f)(3), and whether the showings made to the issuing courts established that the addresses were "not known" within the meaning of Article 1 of the Convention, together present the common merits questions to be adjudicated in this action. They are not criteria of class membership. SAPs' showings were made on a case-wide basis (usually through a memorandum of law supported by a declaration, submitted on information and belief as to all defendants named in the action), asserting that the SADs had supplied false names and

addresses or that the addresses were otherwise not ascertainable, without presenting to the court the results of any defendant-specific inquiry. The sufficiency of those showings is therefore determinable on a case-wide basis from the record presented to the issuing courts. To the extent the Court determines that a particular SAP actually showed that an address was not known in a particular SAC or with respect to particular SADs, relief would not be available as to that case or SAD, but that would not affect the definition or composition of the Classes.

50. GENISBULB seeks to proceed on behalf of a class of mainland-China defendants in the WHAM-O Schedule A action and other SACs, the "***SAD Class,***" who are persons or entities located in mainland China, i.e., the People's Republic of China excluding Hong Kong and Macau, and:

a. who were defendants in one or more SACs;

b. who were not dismissed prior to default;

c. who did not file an appearance in the case;

d. who were subject to a Service Order authorizing service by email, electronic publication, marketplace notice, or other means not authorized by the Convention;

e. who were subjected to default judgment after purported service by email, electronic publication, or other non-Hague means;

f. who did not reach a settlement in the relevant SAC with the SAP; and

g. for whom the judgment remains outstanding or was satisfied other than through settlement.

51. GENISBULB also seeks certification of the following Turnover Subclass: All SAD Class members whose funds, marketplace-account balances, payment-processor balances, or other assets were transferred, released, or paid to an SAP, an SAP's counsel, or their agents as satisfaction or partial satisfaction of a Default Judgment Order or related enforcement order entered in an SAC.

52. GENISBULB may also seek certification of the following WHAM-O Subclass: "All SAD Class members who were listed as Defaulting Defendants in cases filed by WHAM-O Holding, Ltd. and Intersport Corp. d/b/a WHAM-O including case No. 1:22-cv-06802."

53. GENISBULB is a member of the SAD Class, the Turnover Subclass, and the potential WHAM-O Subclass, having been listed as defendant number 44 on the First Amended Schedule A attached to the Default Judgment Order.

54. Likewise, if necessary, the SAD Class or GENISBULB may seek certification of similar subclasses for other SAPs.

55. **Ascertainability**. The SAD Class and the Subclasses are ascertainable from objective criteria reflected in existing court records. Each member's identity, the means by which service was authorized and purportedly effected, whether the member appeared, settled or released its claims, or was voluntarily dismissed before default, and whether default or default judgment was entered against it are determinable from the dockets and filings of the underlying SACs, including the motions for alternative service and supporting declarations and exhibits, the orders authorizing service, the proofs or declarations of service, the Schedule A exhibits

and amended Schedule A exhibits, the default-judgment orders, and the asset-restraint and turnover orders. Membership requires no inquiry into any class member's state of mind or subjective circumstances, and does not depend upon the resolution of any merits question presented by this action.

56. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. On information and belief, more than 8,900 Schedule A cases were filed in this District during the relevant period, each naming, typically, dozens or hundreds of defendants in a single action, and several thousand of those cases resulted in default judgments against mainland-China defendants. Based on the number of defaulted defendants per case reflected in the underlying dockets, the SAD Class comprises tens of thousands of members. Those cases were filed by more than 1,900 distinct named plaintiffs, of whom several hundred filed four or more cases each. Most members of the SAD Class are also members of the Turnover Subclass. Subclasses for individual SAPs are also likely to be numerous: even assuming a modest rate of 10 SAD Class members per case, a WHAM-O Subclass would consist of more than 1,100 members.

57. **Commonality.** Common questions of law and fact predominate or are appropriate for common adjudication, including:

a. whether SAPs made reasonably diligent efforts to ascertain SADs' mailing addresses before invoking FRCP 4(f)(3), and whether the showings made to the issuing courts established that those addresses were "not known" within the meaning of Article 1 of the Convention;

b. whether Schedule A plaintiffs served mainland-China defendants by email, electronic publication, marketplace notice, website publication, or other non-Hague means;

c. whether the Hague Service Convention applied to such defendants;

d. whether courts acquired personal jurisdiction over absent mainland-China defendants before entering Default Judgment Orders;

e. whether the Default Judgment Orders entered without valid service are void;

f. whether asset restraints and turnover orders based on such judgments should be vacated, modified, enjoined, or relieved against;

g. whether defendants who obtained or benefited from such judgments must account for funds restrained, transferred, received, or retained;

h. whether class members are entitled to restitution, interest, attorneys' fees or other equitable relief; and

i. whether coordinated or consolidated proceedings are appropriate.

58. **Typicality.** GENISBULB's claims are typical of the claims of the Class because GENISBULB was a mainland-China Schedule A defendant, was not served through the Hague Service Convention, was subjected to default judgment after electronic service, and seeks relief from the same type of judgment and enforcement procedures challenged on behalf of the Class. Each SAD Class and Turnover Subclass member asserts the same claims, varying only, in the case of Turnover Subclass members, in the amount of restitution sought.

59. GENISBULB's claims against WHAM-O are typical of the SAD Class's claims against the SAP Class because each SAP obtained, in materially similar Rule 4(f)(3) procedures, non-Hague service authorization, effected or purported to effect such service, and obtained Default Judgment Orders through the same standardized Schedule A procedure.

60. **Adequacy.** GENISBULB will fairly and adequately protect the interests of the Class, the potential WHAM-O Subclass, and the Turnover Subclass. GENISBULB has no interests antagonistic to the interests of absent Class or Subclass members. GENISBULB understands that it seeks to act on behalf of other similarly situated defendants and is willing to participate in discovery, supervise counsel, communicate with counsel, and act in the interests of the Class.

61. GENISBULB's counsel are experienced in complex litigation, federal civil procedure, Schedule A litigation, Hague Service Convention issues, and class-action practice.

62. GENISBULB requests that the Court appoint its counsel as class counsel under FRCP 23(g). Proposed class counsel have identified and investigated the claims asserted in this action, are knowledgeable of the applicable law, including independent-action practice under Rule 60(d)(1), the standards governing alternative service under Rule 4(f)(3), and the Hague Service Convention, and will commit the resources necessary to represent the SAD Class and the Subclasses.

63. Certification under Rule 23(b)(1) is appropriate because prosecuting separate actions by individual SAD Class members against individual SAP Class members

would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the parties opposing the classes. Additionally, adjudications with respect to individual class members would be, as a practical matter, dispositive of the interests of the other members not parties to the individual adjudications, or would substantially impair or impede their ability to protect their interests.

64. Since the SAD Class is a class of debtors bringing a class action against a class of creditors seeking a declaration of non-liability, certification under Rule 23(b)(2) is appropriate because Defendants and similarly situated SAPs have acted or refused to act on grounds generally applicable to the SAD Class, making final declaratory and injunctive relief appropriate respecting the SAD Class as a whole.

65. In the alternative, and to the extent the Court determines that any portion of the monetary relief sought is not properly certified under FRCP 23(b)(1) or FRCP 23(b)(2), certification under FRCP 23(b)(3) is appropriate. Common questions predominate over any individual questions, and a class action is superior to hundreds or thousands of individual proceedings: the members of the SAD Class are absent foreign entities who in most instances have never received notice that judgments were entered against them, whose individual recoveries are far too small to support individual representation, and who are located outside the United States; the affected judgments are scattered across thousands of separate, closed dockets before dozens of judges of this Court; and individual litigation would produce inconsistent adjudications of a single recurring jurisdictional question.

66. Certification under FRCP 23(c)(4) is appropriate for common issues including service, the diligence and sufficiency of the showings made in support of non-Hague service, Hague applicability standards, personal jurisdiction, voidness or enforceability of Default Judgment Orders, entitlement to accounting, and the propriety of coordinated relief.

67. Individual issues concerning the amount of funds restrained, transferred, or retained can be addressed in later proceedings through subclasses, claims administration, accounting, special master proceedings, or other manageable procedures.

## DEFENDANT CLASS ALLEGATIONS

68. GENISBULB seeks to proceed, on behalf of the classes outlined above, against a class of Schedule A plaintiffs, the "***SAP Class***," who, like WHAM-O:

a. filed one or more SACs and sought and obtained leave of court under FRCP 4(f)(3) to serve SADs located in mainland China by email, electronic publication, or other non-Hague means;

b. purported to effect service upon one or more such SADs by those means; and

c. subsequently obtained Default Judgment Orders against some of those SADs.

69. **Numerosity.** The SAP Class is sufficiently numerous that joinder of all members is impracticable. Over the course of the relevant period, hundreds of Schedule A plaintiffs filed actions in this District using the same or substantially similar procedure: obtaining authorization for non-Hague electronic service on

mainland-China defendants and thereafter obtaining default judgments against defendants who did not appear. The members of the SAP Class are identifiable from the dockets and records of the underlying Schedule A actions, including the motions for alternative service, supporting declarations and exhibits, orders authorizing service, proofs or declarations of service, and default-judgment orders.

70. **Commonality**. Questions of law and fact common to the SAP Class include whether an SAP seeking to proceed outside the Hague Service Convention presented evidence sufficient to establish that the affected mainland-China defendants' addresses were "not known" within the meaning of Article 1 of the Convention; whether the absence of such a showing prevented the issuing court from concluding that the Convention did not apply; whether service by email, electronic publication, website publication, marketplace notice, or other non-Hague means was therefore ineffective as to such defendants; whether Default Judgment Orders entered without valid service and personal jurisdiction are void; and whether SAP Class members who obtained or retained money or property through enforcement of such judgments are obligated to account for and restore those benefits. These questions are capable of resolution through common legal analysis and objective review of the records presented to the courts when non-Hague service was requested.

71. **Typicality** of WHAM-O's Defenses. The defenses of WHAM-O Holding, Ltd. and Intersport Corp. d/b/a WHAM-O are typical of the defenses of the SAP Class. Like the other SAP Class members, WHAM-O invoked Rule 4(f)(3) to obtain

authorization for non-Hague electronic service on defendants located in mainland China, obtained Default Judgment Orders after such service, and has an interest in defending the validity of the service authorization, the resulting exercise of personal jurisdiction, the Default Judgment Orders entered in its favor, and its entitlement to retain any money or property obtained through enforcement of those judgments. The central defenses available to WHAM-O therefore arise from the same legal and procedural course of conduct and depend upon the same principal propositions that will be asserted by other SAP Class members.

72. **Adequacy** of WHAM-O as SAP Class Representative. WHAM-O is an adequate representative of the SAP Class because its interests with respect to the common issues are aligned with those of the absent SAP Class members. WHAM-O has a direct and substantial interest in establishing that the order authorizing non-Hague service in the underlying action was valid, that such service conferred personal jurisdiction, that the resulting Default Judgment Orders remain valid and enforceable, and that funds obtained pursuant to those judgments need not be returned. Those are the same interests shared by the SAP Class as to the common issues presented in this action. WHAM-O itself has filed at least 116 Schedule A cases. WHAM-O therefore has every incentive to vigorously litigate the legal and factual propositions on which the SAP Class's defenses depend, and no presently apparent interest of WHAM-O is antagonistic to the SAP Class with respect to those common issues.

73. Certification of the SAP Class. Certification of the SAP Class is appropriate under FRCP 23(b)(1)(B) and FRCP 23(b)(2). The validity of the orders authorizing non-Hague service, the resulting exercise of personal jurisdiction, and the enforceability of the Default Judgment Orders will be determined by reference to contemporaneous court records of the underlying actions. Separate adjudications as to individual SAP Class members would risk incompatible standards governing materially identical service practices in this District and would as a practical matter be dispositive of the interests of absent SAP Class members. The SAP Class members have likewise acted on grounds generally applicable to the SAD Class, making final declaratory and equitable relief appropriate respecting the SAP Class as a whole.

74. **Juridical link**. The members of the SAP Class are juridically linked. Each invoked the judicial process of this single District through the same standardized Schedule A procedure; each sought and obtained authorization under Rule 4(f)(3) to serve mainland-China defendants by non-Hague means through materially identical procedures described above; and each obtained Default Judgment Orders and enforcement relief through that same mechanism. The SAP Class members are therefore linked by a common course of conduct before a common court, and not merely by parallel or coincidental litigation conduct, and unitary adjudication of the common issues is appropriate.

75. Since the SAD Class is a class of debtors bringing a class action against a class of creditors seeking a declaration of non-liability, this is the rare situation

where certification under Rule 23(b)(2) for a class of defendants is appropriate. Defendants and similarly situated SAPs have acted on grounds generally applicable to the SAD Class, making final declaratory and injunctive relief, specifically a declaration that the Default Judgment Orders are void, appropriate respecting the SAD Class as a whole.

76. Due process. Certification of the SAP Class comports with due process. The relief sought against the SAP Class on the common issues is declaratory and equitable and turns on the records that the SAP Class members themselves created and filed in the underlying actions. Absent SAP Class members will receive notice and an opportunity to be heard, may appear and be represented by counsel of their choosing, and retain the ability in later phases to assert defenses individual to their own actions (if any), including any defense concerning the particular showing made in support of non-Hague service in a given case, the particular means of service employed, or the disposition of particular funds.

77. In the alternative, and to the extent the Court determines that monetary relief against the SAP Class may not properly be certified under Rule 23(b)(1) or Rule 23(b)(2), certification of the SAP Class under Rule 23(b)(3) is appropriate because the common questions identified above predominate over individual questions and adjudication through a defendant class is superior to separate proceedings against hundreds of SAPs concerning the same recurring service and jurisdictional issues.

## ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS

78. GENISBULB brings this action through counsel on behalf of putative classes whose members seek relief from materially similar service, default-judgment, asset-restraint, and turnover procedures. The work of class counsel is intended to obtain relief benefiting the classes as a whole rather than GENISBULB alone.

79. If this action creates, preserves, or restores a fund or other monetary benefit for the SAD Class or the Turnover Subclass, the Court may award class counsel reasonable attorneys' fees and reimbursement of reasonable litigation expenses from that fund or benefit under Federal Rule of Civil Procedure 23(h) and the equitable common-fund doctrine, after notice and an opportunity to object.

80. GENISBULB also seeks an award of taxable costs to the prevailing party under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920.

81. To the extent permitted by law and appropriate under the circumstances of the applicable underlying action, GENISBULB and the members of the Classes and Subclasses seek reasonable attorneys' fees and litigation expenses under the Lanham Act, 15 U.S.C. § 1117(a), the Copyright Act, 17 U.S.C. § 505, the Patent Act, 35 U.S.C. § 285, and any other applicable fee-shifting authority.

## COUNT I
## INDEPENDENT ACTION IN EQUITY FOR RELIEF FROM VOID JUDGMENTS UNDER FED. R. CIV. P. 60(d)(1)
## Against WHAM-O and the SAP Class, on Behalf of GENISBULB and the SAD Class

82. GENISBULB incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

83. Federal Rule of Civil Procedure 60(d)(1) preserves this Court's equitable power to entertain an independent action to relieve a party from a judgment, order, or proceeding.

84. This independent action under Rule 60(d)(1) is necessary to prevent a grave miscarriage of justice, namely thousands of incorrectly entered Default Judgment Orders, all of which violated the Federal Rules of Civil Procedure and the treaty obligations of the United States.

85. WHAM-O and the members of the SAP Class obtained orders authorizing non-Hague service without presenting evidence to courts sufficient to establish that the mailing addresses of the affected mainland-China defendants were "not known" after reasonably diligent efforts to ascertain those addresses.

86. Because that prerequisite was not established, the records upon which the Service Orders were entered did not establish that the Convention did not apply.

87. Where the Convention applies, service by email on defendants in mainland China is prohibited by the Convention and therefore is not authorized by Rule 4(f)(3).

88. Accordingly, the non-Hague electronic service upon GENISBULB and members of the SAD Class did not establish personal jurisdiction and should therefore be quashed.

89. GENISBULB and the other members of the SAD Class did not appear in the underlying action, did not waive their objection to service or personal jurisdiction, and did not consent to the Court's exercise of personal jurisdiction over them.

90. The jurisdictional defect alleged herein is susceptible to common proof. Whether an SAP presented evidence sufficient to establish that the "address not known" condition of Article 1 of the Convention was satisfied can be determined from the motions for alternative service, supporting declarations and exhibits, Service Orders, proofs or declarations of service, and related records filed in the underlying Schedule A actions.

91. The SAPs' assertions regarding SADs' addresses vary in form but share the same material defect: the SAPs did not establish that the affected SADs' mailing addresses were "not known" within the meaning of Article 1 before obtaining authorization for non-Hague service. In the cases giving rise to the claims of the SAD Class, SAPs either presented no defendant-specific evidence establishing that an address was unknown, relied upon generalized assertions concerning the addresses of defendants collectively, or included evidence of physical addresses in their own submissions while claiming that those addresses were "not known."

92. In contravention of the Convention and FRCP 4, the Default Judgment Orders were entered against absent foreign defendants over whom the issuing courts lacked personal jurisdiction, imposed substantial monetary liability and injunctive relief without an adjudication on the merits, authorized enforcement against property belonging to those defendants, and, in numerous instances, resulted in the restraint, seizure, and transfer of funds pursuant to judgments entered without valid service. Therefore, permitting the challenged Default Judgment Orders to remain enforceable would be a grave miscarriage of justice.

93. Requiring each of the tens of thousands of affected SADs individually to pursue separate proceedings concerning the same recurring jurisdictional defect would not provide an adequate means of resolving the common controversy presented here. The proposed class procedure permits common questions concerning service, application of the Convention, personal jurisdiction, and voidness to be adjudicated consistently while preserving individualized proceedings where necessary to implement relief in the underlying actions.

94. No adequate remedy at law is available to GENISBULB or to the members of the SAD Class. The members of the SAD Class are absent foreign entities that were never validly served and that, in some instances, remain unaware that judgments were entered against them. The affected judgments were entered in thousands of separate, now-closed dockets before dozens of judges of this Court. The individual amounts at issue are too small to support individual representation. And a long series of individual motions would produce inconsistent adjudications of the common recurring jurisdictional questions presented here.

95. Because the challenged Default Judgment Orders are void for lack of personal jurisdiction, no showing of a meritorious defense to the underlying claims is required. A judgment entered without personal jurisdiction over the defendant is a nullity without regard to the merits of the underlying action, and a court has no discretion to allow such a judgment to stand.

96. Neither GENISBULB nor the members of the SAD Class were at fault in failing to defend the underlying actions. They were never served in a manner authorized by the Convention or by FRCP 4(f)(3).

97. The circumstances alleged herein are sufficiently extraordinary to warrant exercise of this Court's preserved authority under Rule 60(d)(1) to prevent a grave miscarriage of justice.

WHEREFORE GENISBULB, individually and on behalf of the WHAM-O Subclass and the SAD Class, respectfully requests that the Court enter judgment in its favor on Count I and:

a. grant GENISBULB and the members of the SAD Class relief under Rule 60(d)(1) from Default Judgment Orders entered without valid service and personal jurisdiction;

b. declare the Default Judgment Orders void for lack of personal jurisdiction;

c. determine, on a class-wide basis, the common questions governing whether Default Judgment Orders entered against members of the SAD Class are void for lack of personal jurisdiction;

d. vacate, set aside, or direct appropriate relief from Default Judgment Orders determined to be void, together with post-judgment enforcement orders dependent upon those judgments;

e. enjoin further enforcement of Default Judgment Orders determined to be void pending implementation of such relief in the appropriate underlying proceedings;

f. award GENISBULB and the SAD Class their taxable costs;

g. award GENISBULB and the members of the SAD Class reasonable attorneys' fees and litigation expenses incurred by the class as a whole to the extent permitted by the Lanham Act, the Copyright Act, the Patent Act, or other applicable law; and

h. grant such other and further equitable relief as the Court deems just and appropriate.

**COUNT II**
**RESTITUTION FOLLOWING RELIEF FROM VOID JUDGMENTS**
**Against WHAM-O and SAP Class Members Who Obtained or Retained Funds, on Behalf of GENISBULB and the Turnover Subclass**

98. GENISBULB incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

99. This Count seeks restitution ancillary to and consequent upon the relief sought in Count I. It does not seek compensatory damages for injuries independent of the challenged judgments and enforcement orders.

100. Federal courts possess inherent equitable authority, after a judgment or order has been reversed, vacated, or set aside, to restore to a party what the opposing party obtained from it by virtue of the judicial process that has been nullified.

101. WHAM-O obtained $4,393.41 from GENISBULB pursuant to the Default Judgment Order and related asset-restraint, turnover, and enforcement orders entered in the underlying action. Members of the SAP Class likewise obtained or received money, marketplace-account balances, payment-processor balances, or other property belonging to members of the Turnover Subclass pursuant to challenged Default Judgment Orders and related enforcement orders.

102. Upon entry of relief under Count I determining that an affected Default Judgment is void for lack of personal jurisdiction, that judgment and the enforcement orders dependent upon it provide no continuing legal basis for the SAP that obtained the benefit to retain money or property transferred through enforcement of the void judgment.

103. Restitution therefore requires WHAM-O and each SAP Class member that obtained or received money or property from a member of the Turnover Subclass by virtue of a void Default Judgment to restore the benefit obtained through that judicial process.

104. Upon a determination that an affected Default Judgment is void under Count I, the restitution sought by the Turnover Subclass is incidental to the declaratory and injunctive relief within the meaning of, e.g., *Kaiser v. Alcoa USA Corp.*, No. 25-1627, 2026 U.S. App. LEXIS 24653, at *21 (7th Cir. Aug. 14, 2026). For each Turnover Subclass member entitled to relief under Count I, entitlement to restitution follows from the invalidity of the judgment and the corresponding SAP's receipt of funds pursuant to that judgment. The amount to be restored is

mechanically determinable from the amount actually collected from that member, together with an appropriate award of interest. The restitution sought does not depend on the intangible, subjective differences of each class member's circumstances and does not require additional hearings to resolve the disparate merits of each individual's case. Separate damages suits by individual Turnover Subclass members would be an extreme waste of resources.

105. The right to such restitution does not depend upon proof that an SAP acted fraudulently, maliciously, in bad faith, or otherwise tortiously in obtaining or enforcing the judgment. Instead, it follows from the invalid judicial basis for the transfer and the SAP's receipt or retention of the resulting benefit, all of which may be determined with reference to the court file for each SAC.

106. Whether an SAP received money or property from a particular SAD, and the amount received, can be determined objectively from the underlying court records, asset-restraint and turnover records, records of marketplaces and payment processors, records of SAPs and their agents, and an accounting. Individual calculations of the amount to be restored do not alter the common legal question whether benefits obtained by virtue of a void judgment must be returned.

107. To the extent funds or property obtained from members of the Turnover Subclass were received, transferred, distributed, or retained by SAPs, their counsel, or their agents, equitable relief may include an accounting sufficient to identify the amounts obtained.

108. GENISBULB seeks restitution in equity in the first instance, including through a constructive trust or equitable lien upon funds and property that remain identifiable or traceable in the hands of the SAPs, their counsel, or their agents. To the extent that such funds or property cannot be identified or traced as to a particular SAP, GENISBULB seeks in the alternative a monetary judgment in restitution in the amount that the SAP obtained from the affected members of the Turnover Subclass.

109. GENISBULB and the Turnover Subclass are entitled, upon the determination of voidness required by Count I, to restitution of money obtained from them by or for the corresponding SAPs through enforcement of the void judgments, together with an equitable award of interest, and such other relief as is necessary to restore the parties to the positions they occupied before enforcement of those judgments.

WHEREFORE GENISBULB, individually and on behalf of the Turnover Subclass, respectfully requests that the Court enter judgment in its favor on Count II and:

a. order WHAM-O to restore to GENISBULB all money and property obtained from GENISBULB pursuant to the Default Judgment Order and related enforcement orders determined to be void;

b. determine, on a class-wide basis, that members of the Turnover Subclass are entitled to restitution from the corresponding SAP Class members

of benefits obtained from them by virtue of Default Judgment Orders determined to be void;

c. order SAP Class members that obtained or received money or property from members of the Turnover Subclass pursuant to Default Judgment Orders determined to be void to restore those benefits in amounts established through accounting, claims administration, coordinated proceedings, or other procedures directed by the Court;

d. order an accounting identifying money and property restrained, transferred, received, distributed, or retained pursuant to the affected Default Judgment Orders and related enforcement orders;

e. impose a constructive trust, equitable lien, or other appropriate equitable remedy upon identifiable or traceable funds or property where necessary to effect restitution;

f. award equitable prejudgment interest where appropriate and post-judgment interest as allowed by law;

g. award such recovery as is available upon any bond or other security posted under Federal Rule of Civil Procedure 65(c) in the underlying actions;

h. award taxable costs and, from any common fund or monetary benefit created, preserved, or restored for the Turnover Subclass, reasonable attorneys' fees and reimbursement of reasonable litigation expenses under Rule 23(h) and the equitable common-fund doctrine;

i. award GENISBULB and the members of the Turnover Subclass reasonable attorneys' fees and litigation expenses to the extent permitted by the Lanham Act, the Copyright Act, the Patent Act, or other applicable law;

j. grant such other and further equitable relief as the Court deems just and appropriate.

**COUNT III**
**UNJUST ENRICHMENT UNDER ILLINOIS LAW (IN THE ALTERNATIVE)**
**Against WHAM-O and SAP Class Members Who Obtained or Retained Funds, on Behalf of GENISBULB and the Turnover Subclass**

110. GENISBULB incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

111. This Count is pleaded in the alternative to Count II, and solely to the extent the Court determines that a separate substantive state-law cause of action is necessary or appropriate to require restoration of benefits obtained through enforcement of Default Judgment Orders determined to be void. GENISBULB does not plead unjust enrichment as a theory of liability independent of the conduct alleged in Counts I and II. This Count rests upon the same conduct and upon the same determination of voidness sought in Count I, and stands or falls with it.

112. Illinois law governs this Count. The benefits at issue were obtained through Default Judgment Orders, asset restraints, and turnover orders entered by this Court in Illinois, and the enrichment alleged here would not have occurred but for those Illinois proceedings. Illinois therefore has the most significant relationship to this claim and to the parties with respect to it.

113. Under Illinois law, a plaintiff states a claim for unjust enrichment by alleging that the defendant unjustly retained a benefit to the plaintiff's detriment and that retention of the benefit violates fundamental principles of justice, equity, and good conscience.

114. WHAM-O received $4,393.41 belonging to GENISBULB through enforcement of the Default Judgment Order and related orders in the underlying action. Other members of the SAP Class likewise received money, marketplace-account balances, payment-processor balances, or other property belonging to members of the Turnover Subclass through enforcement of challenged Default Judgment Orders and related orders, including transfers made by marketplaces, payment processors, financial institutions, and other third-party intermediaries.

115. The benefits received or retained by WHAM-O and the corresponding SAP Class members were obtained at the expense and to the detriment of GENISBULB and the corresponding members of the Turnover Subclass.

116. Upon a determination under Count I that an affected Default Judgment is void for lack of personal jurisdiction, that judgment and the enforcement orders dependent upon it provide no valid legal basis for the corresponding SAP to retain money or property obtained from the affected SAD through enforcement of that judgment. Retention of such benefits after the judicial basis for the transfer has been nullified violates fundamental principles of justice, equity, and good conscience.

117. Unjust enrichment does not require that the recipient have acted wrongfully in obtaining the benefit. An innocent recipient may be required to restore a benefit that, in equity and good conscience, the recipient is not entitled to retain.

118. Each SAP Class member is liable under this Count only for the benefit that it received or retained at the expense of the corresponding member or members of the Turnover Subclass, subject to accounting and proof of amount. GENISBULB and the Turnover Subclass seek only one satisfaction for each deprivation and do not seek duplicative recovery under Counts II and III.

119. GENISBULB and the Turnover Subclass are therefore entitled, in the alternative to Count II, to restitution of the benefits unjustly retained by WHAM-O and the corresponding SAP Class members, together with an accounting, appropriate interest, and such other equitable relief as is necessary to prevent unjust enrichment.

WHEREFORE GENISBULB, individually and on behalf of the Turnover Subclass, respectfully requests that the Court enter judgment in its favor on Count III, in the alternative to Count II, and:

a. find that WHAM-O has been unjustly enriched by retaining money or property obtained from GENISBULB through enforcement of a Default Judgment determined to be void;

b. determine, on a class-wide basis, that an SAP Class member that retains a benefit obtained from a member of the Turnover Subclass through

enforcement of a Default Judgment determined to be void is liable in unjust enrichment to the corresponding Turnover Subclass member;

c. order WHAM-O and the corresponding SAP Class members to restore the benefits unjustly retained in amounts established through accounting, claims administration, coordinated proceedings, or other procedures directed by the Court;

d. order an accounting and tracing sufficient to identify money and property obtained, received, distributed, or retained pursuant to the affected Default Judgment Orders and related enforcement orders;

e. award prejudgment interest where appropriate and post-judgment interest as allowed by law;

f. award taxable costs and, from any common fund or monetary benefit created, preserved, or restored for the Turnover Subclass, reasonable attorneys' fees and reimbursement of reasonable litigation expenses under Rule 23(h) and the equitable common-fund doctrine, without duplicating any award under Count II;

g. award GENISBULB and the members of the Turnover Subclass reasonable attorneys' fees and litigation expenses to the extent permitted by the Lanham Act, the Copyright Act, the Patent Act, or other applicable law, without duplicating any award under another Count; and

h. grant such other and further relief as the Court deems just and appropriate.

Dated: September 3, 2026

Respectfully submitted,

/s/ Wesley E. Johnson
Wesley E. Johnson
Benjamin Solter
Shu-Yu Lin
Cross-Border Counselor LLP
105 W. Madison, Ste. 2300
Chicago, IL 60602
(312) 752-4828
wjohnson@cbcounselor.com
bsolter@cbcounselor.com
slin@cbcounselor.com

/s/ Adam B. Goodman
Adam B. Goodman
Goodman Tovrov Hardy & Johnson LLC
agoodman@goodtov.com
105 W. Madison, Ste. 2300
Chicago, IL 60602
(312) 238-9592

*Attorneys for Ningbo Jiaruisi E-Commerce Co., Ltd. d/b/a GENISBULB*